OPINION AND ORDER

ROBERT N. CLINTON, Associate Justice.
[1] This matter involves an appeal by Julia Acothley, Respondent/Appellant from the entry of a protection order by the Tribal Court in No. 2011-CV-003 on or about November 28, 2011 following a brief hearing. On the eve of argument Julia Acothley filed an Appellate Brief. The Court offered Mr. Honanie time to respond in writing but he declined. Oral argument in the appeal was heard at the Hopi Tribal Courthouse on November 18, 2011 with the parties appearing in person and representing themselves and the members of this Court participating telephoni-cally.
[2] For reasons more fully stated below this Court finds that Tribal Court lacked jurisdiction over the most important part of the protection order entered on September 1, 2011 and as to the remainder the neither the evidence presented nor the procedure employed by the Tribal Court justified the entry to a permanent protection order of one year duration and for that reason reverses the entry of the protection order.
Background
A. Facts
[3] Aaron Honanie is a member of the Hopi Tribe who resides on Hopi lands. He is employed by the Tuba City Boarding School located on federally-owned lands within Tuba City, Arizona. The parties agreed at oral argument that the Tuba City Boarding School is located north of the boundary of the Hopi Reservation and is therefore located on lands within the *6 Navajo Reservation. Aaron Honanie’s son is married to Julia Acothley’s daughter, Jana Acothley who is a member of the Navajo Nation, and that couple resides on Hopi lands in or near Moenkopi. At the time of the initiation of the proceedings at issue in this proceeding, Aaron Honanie was charged in Hopi Tribal Court with sexually abusing Jana Acothley and the Navajo courts had issued a 5 year protection order against him to stay away from Jana Acothley and her residence. The Court takes judicial notice of the fact that Mr. Honanie was later convicted of the then pending criminal charges in the Hopi Tribal Court and at the time of argument in this matter was awaiting sentencing.
[4] Julia Acothley is a member of the Navajo Nation and the mother of Jana Acothley. She resides on Navajo lands but enters Hopi lands to visit the home of her daughter.
B. Procedure Below
[5] On or about August 12, 2011 Aaron Honanie filed a Petition for Family Abuse Protection Order & Motion for Temporary Protection Order with the Hopi Tribal Court generally alleging that Julia Acoth-ley had harassed him at his place of work by talking negatively about him to his supervisors about him and presenting courts documents and his arrest warrant related to the pending criminal charges to other employees.
[6] On August 16, 2011, the Tribal Court denied the Motion for a Temporary Protection Order but scheduled a hearing on a permanent protection order of one year duration for a hearing on September 1, 2011.
[7] On September 1, 2011 the Tribal Court held a hearing on the permanent protection order, the procedures for which, as more fully described below, can most charitably be described as excessively summary. What little “evidence” was presented at the hearing focused exclusively on whether Julia Acothley had harassed Aaron Honanie at his place of work, an allegation which was made in the Petition and simply confirmed by Mr. Honanie in response to a question from the Tribal Court as to whether the facts in his verified petition were true. During her defense, Julia Acothley denied that she had ever gone to Mr. Honanie’s place of work to harass or disparage him, but noted that her grandchildren attended school there and she had gone to the school for that purpose. Ms. Acothley also announced at the beginning of the hearing that she had a witness with her to present to the court, her daughter Jana. The Court never permitted Julia Acothley to present any written evidence and permitted her to present any witnesses. Thus, the Court never heard from her daughter Jana who Ms. Acothley noted was in the courtroom as a witness. Instead, despite her denial that she had in any way harassed Aaron Honanie at his place of work, the Court aggressively asked Ms. Acothley with she “objected” to the Court entering the requested protection order despite the contest over whether evidentiary grounds for its entry existed.
[8] During a portion of the hearing, the Tribal Judge noted that the Petition included a request to stay away from a residence but noted that no evidence had been shown that Ms. Acothley had ever gone to or harassed Mr. Honanie at his residence or the separate residence of his son, which apparently was listed on the Petition. Thus, the Tribal Judge indicated he was going to limit his order to Mr. Honanie’s place of work excepting Ms. Acothley’s legitimate need to be at the school for her children or grandchildren.
*7 [9] Despite this ruling on the residence, the following, rather abrupt and, at least in Hopi tradition, perhaps rude, exchange with the Tribal Judge occurred at the end of the hearing as Ms. Acothley unsuccessfully tried to have her defense heard:
JULIA: I disagree with your order, still
JUDGE: I understand you disagree with my order. I don’t care, He’s proven—he’s come in and he’s testified under oath that you’ve gone to his house. You didn’t disagree—(interrupted by Julia).
JULIA: I didn’t go to his house.
JUDGE: (talking over Julia) his place of employment. I asked you specifically if you had any problems with an order that you’re not to discuss his employment at his place of employment or any of his (unintelligible), You said you had no problem. I asked you specifically if you had any problem with an order that says you’re not to contact him in any manner. You said you had no problem. Did you not?
JULIA: I didn’t understand your question in the first place.
JUDGE: Alright the order stands. You’re free to go. We stand in recess.
[10] Despite previously ruling that no evidence had been presented of contact at or harassment occurring at the home, when the Tribal Court entered its Family Abuse Protection Order on September 1, 2011, it required for one year that Julia Acothley “shall stay 100 yards away from Petitioner’s residence and his place of employment at Tuba City Boarding School, with the exception of picking up grandchildren/children at school or to attend different school functions.” (Emphasis added).
[11] Julia Acothley filed a timely 20-Day Notice of Appeal of the Family Abuse Protection Order. According to her Notice of Appeal, she based her appeal on the claim that the Tribal Court denied her “an opportunity to fully present testimony on my behalf and that my due process rights were violated by failure of the Court [in] not allowing me the full opportunity to defend myself in the matter.
Discussion
A. Jurisdiction
[12] While not raised in the Notice of Appeal, this Court on its own motion notes a problem with the subject matter jurisdiction asserted by the Tribal Court. The Respondent in this case is a member of the Navajo Nation on the bulk of the harassment claimed in the Petition and allegedly proven at trial occurred at the Tuba City Boarding School on federal land within the Navajo Nation, not within the territorial jurisdiction of the Hopi Tribe. More importantly, the Family Abuse and Protection Order entered by the Tribal Court on September 1, 2011 expressly required the Respondent/Appellant to stay 100 yards away from “[Petitioner’s] place of employment at Tuba City Boarding School with the exception of picking up grandchildren/children at school or to attend different school functions.”
[13] Hopi Ordinance 50, Hopi Family Relations, Section 6.01(a)(3) expressly gives the Hopi Tribal Court jurisdiction to issue protection orders in the following circumstances:
Any person within the territorial jurisdiction of the Hopi Tribe may seek remedies for protection within such jurisdiction, regardless of where the abuse or violence occurred. The court may provide remedies to protect persons within the territorial jurisdiction of the Hopi Tribe to prevent future abusive or violent conduct.
(Emphasis supplied). Under the plain language of Section 6.01(a)(3), while abuse *8 anywhere inside or outside of the jurisdiction of the Hopi Tribe can provide the evidentiary basis for a protection order, the reach and effect of any protections orders entered by the Hopi Tribal Court is expressly limited to the territorial jurisdiction of the Hopi Tribe. While other jurisdictions may be required to honor Hopi protection orders under the express requirements of the full faith and credit provisions of the Violence Against Women Act, 18 U.S.C. Section 2265, the Hopi Tribal Court has no power to enter a protection order that directly purports to reach conduct outside of the territorial jurisdiction of the Hopi Tribe.
[14] Since the Tuba City Boarding School is located on federally owned land within the Navajo Reservation, it is located outside of the territorial jurisdiction of the Hopi Tribe. Thus, insofar as the Family Abuse and Protection Order entered by the Tribal Court on September 1, 2011 expressly required the Respondent/Appellant to stay 100 yards away from “[Petitioner’s] place of employment at Tuba City Boarding School with the exception of picking up grandchildren/children at school or to attend different school functions,” the Order exceeded the subject matter jurisdiction of the Tribal Court under Section 6.01(a)(3) and must be vacated for that reason.
B. Validity of Family Abuse and Protection Order Insofar as It Restrains Conduct on the Hopi Reservation.
[15] The Family Abuse and Protection Order entered by the Tribal Court on September 1, 2011 not only restrained conduct at the Tuba City Boarding School, it also purported to restrain the Respondent/Appellant from coming within 100 yards of the Petitioner’s residence, which, this Court is informed, is located on the Hopi Reservation. There are two basic problems, however, with this portion of the Order which require that it be reversed and vacated: (1) lack of evidentiary support and (2) denial of due process.
1. Lack of Evidentiary Support
[16] During the hearing Petitioner/Appellee conceded that the Respondent/Appellant had not come to or in any fashion harassed him at his residence. The audio recording of the hearing therefore reflects that the Tribal Court orally denied his request that the protection order extend to his residence since all allegations of harassment were workplace and employer related and no evidence had been presented suggesting a need for order protecting Petitioner at his residence. Despite so ruling from the bench, for reasons that are totally unexplained in the Family Abuse and Protection Order entered by the Tribal Court on September 1, 2011, the Tribal Court included the Petitioner’s residence in the written order it entered on September 1, 2011. Having reviewed the brief hearing record, this Court agrees with the Tribal Court’s bench ruling that no evidence had been presented and no need shown for a protection order that extended to the residence of the Petitioner/Appellee. Thus, this Court believes that the residence was included in the Family Abuse and Protection Order entered on September 1, 2011 either in error or without any evidentiary basis. In either case, insufficient evidentiary support exists to justify entry of the Order protecting Petitioner/Appellee in his residence and for that reason the Order must be reversed and vacated.
2. Denial of Due Process
 [17] All persons who appear before the Hopi Tribal Court are entitled to fair procedures and due process protected *9 by the federal Indian Civil Rights Act of 1968, 25 U.S.C. § 1302(8). In LaRance v. Hopi Tribe, 10 Am. Tribal Law 345 (Hopi Ct.App.2010), this Court noted that where Tribal, as opposed to Village, decision-making was involved, full due process rights must be accorded. This Court also noted in footnote 13 of the LaRance opinion, full due process protections are required from the Tribe whenever either liberty or property interests are at state. At a minimum, due process in a civil, as opposed to criminal, context generally requires adequate notice of the proceedings and a full and fair opportunity to present evidence and defend. Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950).
[18] In the present case, the manner in which the trial judge conducted the hearings denied basic due process rights. Since both parties represented themselves at trial and neither is a licensed advocate, the Tribal Court certainly had some leeway in conducting the proceeding in a slightly more inquisitorial and less adversary manner. Nevertheless, the Tribal Court had an obligation to assure that he has heard evidence presented by the parties and had given each party a full and fair opportunity to present any relevant evidence they wished to present. The Tribal Court’s conduct of the hearing did not manifest these features. At the start of the hearing, the Tribal Court asked whether either party had any witnesses and the Respondent/Appellant indicated that she did have witness present in the courtroom. This Court was subsequently advised that the witness was her daughter, who was married to the son of Petitioner/Appellee and who had been the alleged victim of a sexual assault by the Petitioner/Appellee, criminal charges for which was then pending in the Hopi Tribal Court. After swearing both parties, the Court advised the Petitioner that he had read the Petition and merely asked whether the allegations it contained were true, which the Petitioner indicated they were. The Court never elicited any testimony from the Petitioner about the details of any of the alleged acts of harassment but thereafter merely assumed the truth of the allegations.
[19] The Tribal Court then turned to the Respondent and asked if the allegations were true. Despite her denial of the allegations, the Court nevertheless asked if she would have any objection to the entry of an order prohibiting harassment at the workplace despite the fact she denied that any such conduct occurred. The tenor of the discussion seemed to be that if Respondent was not harassing the Petitioner, she should have no reason to object and, consequently, Respondent initially agreed with the request. When the Tribal Court indicated, however, that he would enter the requested protection order, the Respondent strongly objected and the colloquy quoted above ensued in which Respondent clearly objected to the Order and sought to present evidence. The Tribal Court rather abruptly and rudely cut her off and adjourned the proceedings saying “the order stands.” Despite having previously been advised that the Respondent had a witness in the courtroom, the Tribal Court never permitted either the Respondent or her witness to fully testify and never asked any evidentiary questions of either of them. Furthermore, Respondent was never permitted to present any of the documents she had brought to court as evidence. Such procedures clearly denied the Respondent the opportunity to fully and fairly defend and therefore denied her due process of law.
Conclusion
[20] Insofar as the Family Abuse and Protection Order entered by the Tribal *10 Court on September 1, 2011 expressly required the Respondent/Appellant to stay 100 yards away from “[Petitioner’s] place of employment at Tuba City Boarding School with the exception of picking up grandchildren/children at school or to attend different school functions,” the Order exceeded the subject matter jurisdiction of the Tribal Court under Section 6.01(a)(3) and that portion of the Order must be vacated for that reason. Insofar as the remainder of the Order only affected conduct within the jurisdiction of the Hopi Tribe, it was within the jurisdiction of the Tribal Court but must be reversed and vacated both for lack of evidentiary support and because the Tribal Court procedures by which the Order was entered denied the Respondent/Appellant due process of law in violation of the 25 U.S.C. § 1302(8).
Order
[21] The Family Abuse and Protection Order entered by the Tribal Court on September 1, 2011 must be and hereby is reversed and vacated.